UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ZACKERY TRENT THURSTON,<br><br>            Plaintiff,<br><br>    v.<br><br>ADA COUNTY and CANYON COUNTY,<br><br>            Defendants. | Case No. 1:21-cv-00102-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this civil rights matter are Defendants' respective Motions to Dismiss. *See* Dkt. 6 & 7. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1. Accordingly, the Court enters the following Order granting the Motions and dismissing the Complaint without prejudice.

## FACTUAL ALLEGATIONS

At the time Plaintiff filed the Complaint in this action, he was a prisoner in the custody of the Idaho Department of Correction. *See Compl.*, Dkt. 1, at 1. Plaintiff has since been released to supervision. *See* IDOC Offender Search (accessed Sept. 7, 2021), https://www.idoc.idaho.gov/content/prisons/offender_search/detail/115498.

Plaintiff was on probation for a 2015 Ada County conviction when, on February 1, 2019, he was arrested on a Canyon County DUI charge and placed in the Canyon County

MEMORANDUM DECISION AND ORDER - 1

Jail. Three days after his arrest, Plaintiff was arraigned on this new charge without an attorney present, despite the fact that Plaintiff had requested one. Plaintiff's bail was initially set at $500,000, for which Plaintiff could not arrange a bond. *Compl.* at ¶¶ 5–6.

While Plaintiff was being held in the Canyon County Jail, he was served with an Ada County agent's warrant for a suspected probation violation, likely because of the Canyon County DUI charge. The official who requested the warrant had not met or interviewed Plaintiff before seeking the warrant. *Id*. at ¶ 7.

On February 8, 2019, Plaintiff was arraigned in *Canyon County* on the *Ada County* probation violation charge. The magistrate judge for the Third Judicial District Court in Canyon County set Plaintiff's bail on the Ada County charge at $100,000. Plaintiff's Canyon County bail was later reduced to $100,000 as well. On February 15, 2019, Plaintiff posted bonds—to Canyon County—for both the Canyon and Ada County charges. Plaintiff states that the bonds cost him $16,438.00. *Id*. at ¶¶ 8–10. Though it is not entirely clear from the Complaint, Plaintiff might have been released from Canyon County custody as a result of posting bond—and, presumably, transferred to Ada County custody—at that time. What is clear is that Plaintiff remained in the custody of either Canyon or Ada County even after posting the bonds.

One week later, Ada County received from Canyon County the bond for the Ada County probation violation charge. However, on February 27, 2019, the Ada County prosecutor—perhaps unaware that bond had been posted in Canyon County on the Ada County charge—issued a bench warrant for Plaintiff on the Ada County charge. *Id*. at ¶¶ 11–12.

MEMORANDUM DECISION AND ORDER - 2

The Ada County Clerk quashed the bench warrant on March 1, 2019, after Plaintiff submitted a copy of the agent's warrant and proof that he had posted bond in Canyon County for the Ada County charge. The clerk also set an initial hearing on the Ada County charge for the afternoon of March 1. However, the clerk then vacated that hearing "under the [mistaken] assumption that [the hearing] had already occurred in Canyon County." *Id*. at 13. Instead, the clerk set an arraignment hearing on the Ada County charge for March 4.

On that date, Plaintiff appeared for his Ada County arraignment, again without an attorney. Plaintiff informed the state court that "he had already posted bond and should therefore be released." *Id*. at ¶ 15. However, the state district judge for the Fourth Judicial District Court told Plaintiff that "Canyon County didn't have jurisdiction to issue the bond" and revoked the bond, "therefore keeping [Plaintiff] incarcerated." *Id*.

Plaintiff alleges that, because of "problems and confusion between Ada County and Canyon County," he "felt that his only choice was to accept a plea on the Canyon County charge, which also meant that his parole would be revoked per the Ada County probation violation charge." *Id*. at ¶ 19. On February 11, 2020, Plaintiff was sentenced to 10 years in prison with 1.5 years fixed on the Canyon County charge. *Id*. at ¶ 20. Plaintiff "had by that time been incarcerated [in either Canyon or Ada County] for a total of 358 days," but the judgment of conviction on the Canyon County charge gave him credit for only 15 days served—presumably because Plaintiff was released from Canyon County custody, and transferred to Ada County, on February 15, 2021, 15 days after his arrest. *Id*. at ¶ 21.

MEMORANDUM DECISION AND ORDER - 3

Plaintiff's probation on his 2015 Ada County conviction was later revoked as a result of the Canyon County DUI conviction. Plaintiff "was required to serve the remaining two years of the determinate sentence imposed" for the 2015 conviction. *Id.* at ¶ 22.

According to Plaintiff, both Ada and Canyon Counties deprived him of liberty without due process of law and deprived him of his right to counsel in his state court criminal proceedings. *See Compl.* at ¶¶ 32–51. Plaintiff also claims that Ada County deprived him of property without just compensation or due process and imposed excessive bail. *Id.* at ¶¶ 27–31. Plaintiff asserts these claims under the Fifth, Sixth, Eighth, and Fourteenth[1] Amendments to the United States Constitution.

## DISCUSSION

Canyon County moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(2), (b)(5), and (b)(6). *See* Dkt. 6. Ada County moves to dismiss under the same subsections of Rule 12, as well as under Rule 4(m). *See* Dkt. 7. Because the Court concludes that the Complaint fails to state a claim upon which relief may be granted under Rule 12(b)(6), the Court need not address Defendants' other arguments.[2]

---

[1] The Complaint does not actually cite the Fourteenth Amendment in describing Plaintiff's due process claims but, instead, relies on the Fifth Amendment. *Compl.* at 6–7. However, it is the Due Process Clause of the Fourteenth Amendment that applies to states and local governmental entities, as opposed to the federal government. Thus, the Court will treat Plaintiff's due process claims as if they are asserted under that amendment.

[2] The Court does note, however, that it will not dismiss this case for lack of timely service, despite the fact that Plaintiff fails to explain the delay in serving the Complaint. This Court favors resolution of claims on the merits, and, in this case, service was only six days late.

MEMORANDUM DECISION AND ORDER - 4

1.     **Rule 12(b)(6) Standard of Law**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Dismissal is also appropriate where the plaintiff has included allegations disclosing an absolute defense or bar to recovery. *See Weisbuch v. County of Los Angeles,* 119 F.3d 778, 783 at n.1 (9th Cir. 1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other ... evidence on summary judgment establishes the identical facts.").

A complaint fails to state a claim for relief if the factual assertions in the complaint are insufficient for the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, a complaint need not contain "detailed factual allegations," but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

**2.     Legal Standards Governing § 1983 Claims**

Plaintiff brings his claims under 42 U.S.C. § 1983, the federal civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Governmental officials generally are not liable under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent violated the Constitution. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which

the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of

his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

To bring a § 1983 claim against a local governmental entity, a plaintiff must allege that the execution of an official policy or an unofficial custom or practice inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, the requisite elements of a § 1983 claim against such a defendant are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). A policy-based § 1983 claim may also be maintained "when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010) (internal quotation marks omitted), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).

An unofficial custom or practice must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a

traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### 3. The Complaint Fails to State a Claim upon Which Relief May Be Granted Because It Does Not Plausibly Allege the *Monell* Requirements

Defendants are both local governmental entities. Therefore, to survive Defendants' Motions to Dismiss, Plaintiff must plausibly allege that each Defendant had a policy or custom amounting to deliberate indifference to Plaintiff's constitutional rights, and that the policy or custom was the moving force behind the violation of those rights. *See Monell*, 436 U.S. at 694. Plaintiff has failed to do so.

The crux of Plaintiff's claims is that various county or state actors, such as a county clerk, a county prosecutor, and trial court judges,[3] failed to ensure that Plaintiff's constitutional rights were upheld. But the Complaint plausibly alleges only that these various individual actors each made individual judgments that may have resulted in the

---

[3] Judges in Idaho are considered employees of the state, not of the counties in which they preside over cases. *See Roth v. Idaho*, No. 1:19-cv-00200-DCN, Dkt. 20 at 2–4 (D. Idaho Feb. 14, 2020) (unpublished) (relying on the four-factor test of *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994), and on *Twin Falls County v. Cities of Twin Falls & Filer*, 146 P.3d 664 (Idaho 2006), in concluding that the "Ada County District Court" is an "arm of the state" for purposes of Eleventh Amendment immunity); *see also* Idaho Const. art. V ("The judicial power of the state shall be vested in a court for the trial of impeachments, a Supreme Court, district courts, and such other courts inferior to the Supreme Court as established by the legislature. The courts shall constitute a unified and integrated judicial system for administration and supervision by the Supreme Court.").

violation of Plaintiff's Fifth, Sixth, Eighth, or Fourteenth Amendment rights. *See Taylor*, 880 F.2d at 1045. There is nothing in the Complaint to suggest that these actions were the result of a policy, custom, or practice of either Defendant, and Plaintiff does not allege a pattern of such violations such that a factfinder could infer a custom or practice. Instead, the Complaint plausibly suggests only that these various individuals' actions (or inaction) may have been "isolated or sporadic incidents," which is not enough to satisfy *Monell*. *See Trevino*, 99 F.3d 911, 918 (9th Cir. 1996).

Additionally, the Complaint fails to plausibly allege that any of the actions of which Plaintiff complains were the result of a *deliberately indifferent* policy, custom, or practice of either Defendant. For example, the Ada County Clerk vacated Plaintiff's initial hearing—at which Plaintiff would have been informed of his right to counsel— because the clerk acted "under the assumption" that the hearing had already taken place. And the prosecutor may have made a mistake in seeking the later-quashed bench warrant, but there are no allegations that the prosecutor was aware of a risk that Plaintiff's rights could be violated by that warrant. It is plausible that the individual clerks, prosecutors, and judges might—at most—have acted negligently in their processing and treatment of Plaintiff's criminal cases. But mere negligence is insufficient to state a plausible § 1983 claim against anyone, *see Daniels*, 474 U.S. at 332, and it certainly does not support a reasonable inference that Ada or Canyon County had a policy, custom, or practice amounting to deliberate indifference to Plaintiff's constitutional rights, *see Mabe*, 237 F.3d at 1110–11.

MEMORANDUM DECISION AND ORDER - 10

Plaintiff responds that the Complaint is not subject to dismissal under *Monell* because plaintiffs "are not required to 'plead around' affirmative defenses." Dkt. 9 at 2; Dkt. 10 at 2. However, *Monell* is not an affirmative defense—its requirements are the very elements of a § 1983 claim against a local governmental entity, and plaintiffs are indeed required to plausibly allege facts supporting those elements in order for a complaint to state a colorable claim against a municipality.[4]

Plaintiff also argues that the Complaint states a plausible claim against Defendants because the counties allegedly "procedurally and substantively violated" certain Idaho statutes and court rules, such as Idaho Code § 19-2904 and Idaho Rules of Civil Procedure 44 and 46; Plaintiff contends that, "through [the] judicial process, the defendants were the 'final' decision makers as to [the] violations" of these statutes and rules. *See* Dkt. 9 at 9–10; Dkt. 10 at 9–10. These bare conclusions are insufficient to state a plausible policy, custom, or practice claim. *See Iqbal*, 556 U.S. at 678.

Plaintiff contends that each Defendant has (or had) a policy, custom, or practice amounting to deliberate indifference to Plaintiff's constitutional rights. However, he has failed to support this contention with any facts and, thus, has not plausibly alleged that any such practice exists at all, much less that a county practice amounted to deliberate indifference and violated Plaintiff's constitutional rights. At best, Plaintiff alleges negligent conduct by individual actors and then simply assumes that (1) these

---

[4] Plaintiff also ignores the governing Rule 12(b)(6) standard announced in *Twombly* and *Iqbal*, instead relying on the now-defunct "no set of facts" standard. *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), *abrogated by Twombly*, 550 U.S. 544.

individuals' actions were taken pursuant to a policy, custom, or practice of the Defendant counties and (2) that practice constitutes deliberate indifference. Such inferences cannot reasonably be drawn from the Complaint as currently pleaded.

For these reasons, the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal under Rule 12(b)(6).

**4. To the Extent Some of Plaintiff's Claims Imply the Invalidity of His Conviction or Sentence, Those Claims Are Barred by *Heck v. Humphrey***

At least some of Plaintiff's claims implicate challenges to Plaintiff's criminal conviction or sentence. For example, Plaintiff asserts he was denied his Sixth Amendment right to counsel and that he felt forced to plead guilty in his criminal proceedings. He also claims that he was denied credit for time served and that, therefore, his sentence was longer than legally permissible. In addition to being implausible for failing to allege a policy, custom, or practice amounting to deliberate indifference, these claims also are implausible because they are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the United States Supreme Court held that a civil rights claim "is not cognizable under § 1983" if the plaintiff's success would "render a conviction or sentence invalid." *Id*. at 486–87. Thus, if a favorable verdict in a civil rights action "would necessarily imply the invalidity" of the plaintiff's conviction or sentence, the plaintiff must first show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to

make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487.

As the Supreme Court later clarified, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005). The *Heck* bar to recovery applies to claims of improper probation or parole revocations. *See id.* at 82 (holding that an inmate may initiate a § 1983 action to seek invalidation of "state procedures used to deny parole eligibility … and parole suitability," but he may not seek "an injunction ordering his immediate or speedier release into the community.").

If Plaintiff were to succeed on his claim that he was denied his Sixth Amendment right to counsel or that he was forced to plead guilty in his criminal proceedings, it would necessarily imply that the conviction stemming from those proceedings was invalid. And, if Plaintiff were to succeed on his claim that his sentence was incorrectly calculated because he was denied appropriate credit for time served, it would necessarily imply that the imposed duration of that sentence was invalid. Absent a favorable termination of the state court criminal proceedings against Plaintiff, these types of claims are barred by *Heck*. Because Plaintiff has not alleged such a favorable termination, the claims are implausible.

**5.     Conclusion**

The Complaint fails to state a claim upon which relief may be granted because it does not plausibly allege the *Monell* requirements, and at least some of the claims are barred by *Heck v. Humphrey*.

## ORDER

**IT IS ORDERED** that Canyon County's and Ada County's Motions to Dismiss (Dkt. 6 & 7) are GRANTED, and the Complaint (Dkt. 1) is DISMISSED without prejudice. Any amended complaint must be filed within 21 days after entry of this Order. If Plaintiff fails to file a timely amended complaint, final judgment will be entered for the reasons stated in this Order.

DATED: September 28, 2021

B. Lynn Winmill
U.S. District Court Judge